*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

UNPUBLISHED
December 17, 2020

Plaintiff-Appellee,

v

No. 348539
Livingston Circuit Court
LC No. 18-025329-FH

GARY THOMAS FISCHER,

Defendant-Appellant.

Before: O'BRIEN, P.J., and M. J. KELLY and REDFORD, JJ.

PER CURIAM.

Defendant, Gary Fischer, appeals by right his jury trial convictions of first-degree home invasion, MCL 750.110(a)(2), resisting and obstructing a police officer, MCL 750.81d(1), and aggravated assault, MCL 750.81a(1). The trial court sentenced Fischer as a fourth habitual offender, MCL 769.12, to serve concurrent sentences of 15 to 50 years for the home invasion conviction, one year for the resisting and obstructing conviction, and one year for the aggravated assault conviction. For the reasons stated in this opinion, we affirm Fischer's convictions, but we remand for resentencing.

## I. BASIC FACTS

On September 18, 2018, the complainant, Heather Miner, woke up to discover Fischer attempting to enter her bed. Fischer appeared to be intoxicated. Miner screamed at him to get out of her bed and used her feet to push him. She tried to make him leave, but he told her that he could not drive away because he was intoxicated. When Fischer refused to leave, Miner told him that she was going to call the police. He took her phone from her, however, by twisting her arm behind her back. Miner testified that during the ensuing physical altercation, Fischer hit her in the head with the phone and pinned her to the ground, and, in retaliation, she grabbed his crotch and bit his face. She also punched him in the face with a closed fist. When she was able to, she fled the home. Fischer followed her outside and asked her to talk, promising her that if she agreed to not call the police he would return her phone. Miner recounted that she approached him, grabbed her phone from his hand, and ran into her home through the garage. She explained that she locked the door leading from the garage into her home and checked that the front door was also locked. She

retrieved a knife from the kitchen and called 9-1-1. Fischer got back into her house and confronted Miner in her bedroom. The two wrestled over possession of the knife while the 9-1-1 operator was still on the line. Then, when Fischer saw police lights, he backed away and threw some furniture around the house before leaving. Outside, an officer directed Fischer to stop, but he ran, collided with a trash can, and was apprehended.

## II. SPECIFIC UNANIMITY INSTRUCTION

### A. STANDARD OF REVIEW

Fischer argues that the trial court erred by not providing a specific unanimity instruction with respect to the home invasion charge, and that his trial lawyer provided ineffective assistance by failing to request the instruction. Fischer did not object to the jury instructions, so the issue is unpreserved. This Court reviews unpreserved issues for plain error affecting a defendant's substantial rights. *People v Waclawski*, 286 Mich App 634, 678-679; 780 NW2d 321 (2009). To establish plain error, the defendant must show: (1) an error occurred, (2) "the error was plain, i.e., clear or obvious," and (3) the defendant's substantial rights were affected by the plain error, i.e., "the error affected the outcome of the lower court proceedings." *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999). Reversal is warranted only if the plain error resulted in the conviction of an innocent defendant or "the error seriously affected the fairness, integrity, or public reputation of judicial proceedings independent of the defendant's innocence." *Id.* The constitutional question of whether a defendant's lawyer provided ineffective assistance is reviewed de novo. *People v Unger*, 278 Mich App 210, 242; 749 NW2d 272 (2008).

### B. ANALYSIS

A criminal defendant is guaranteed the right to a unanimous jury verdict. Const 1963, art 1, § 14; *People v Cooks*, 446 Mich 503, 510–511; 521 NW2d 275 (1994). It is the duty of the trial court to "protect a defendant's right to a unanimous verdict" with proper instructions to the jury on the unanimity requirement. *People v Chelmicki*, 305 Mich App 58, 67–68; 850 NW2d 612 (2014), quoting *Cooks*, 446 Mich at 511. "Under most circumstances, a general instruction on the unanimity requirement will be adequate." *People v Martin*, 271 Mich App 280, 338; 721 NW2d 815 (2006). "However, the trial court must give a specific unanimity instruction where the state offers evidence of alternative acts allegedly committed by the defendant and '1) the alternative acts are materially distinct (where the acts themselves are conceptually distinct or where either party has offered materially distinct proofs regarding one of the alternatives), or 2) there is reason to believe the jurors might be confused or disagree about the factual basis of defendant's guilt.' " *Id.*, quoting *Cooks*, 446 Mich at 524.

In this case, the prosecutor alleged that Fischer entered Miner's home without permission by using a garage code so he could enter through the unlocked door connecting the garage to the Miner's home. The prosecution also presented evidence that Fischer subsequently left Miner's home and then reentered it without permission by breaking open the locked front door. To defend the first entry, Fischer argued that based on his prior, intimate relationship with Fischer—which included times when he was permitted to enter the home by letting himself in using the garage codes—he had implied permission to enter the home. To defend the second entry, he challenged the evidence showing that he had broken open the front door to reenter after he had followed Miner

outside. Because the two entries were distinguished from each other in the manner they were performed, and because the defense for each entry relied on materially different proofs, we conclude that the alternative acts allegedly committed by Fischer were materially distinct. Consequently, Fischer has established that an error occurred and that the error was plain. See *Carines*, 460 Mich at 763.

He has not, however, shown that the error affected his substantial rights. See *id*. The elements of first-degree home invasion are (1) that the defendant either broke and entered a dwelling without permission *or* entered a dwelling without permission; (2) that the defendant either (a) intended when entering to commit a felony, larceny, or assault in the dwelling *or* (b) at any time while entering, present in, or exiting the dwelling commits a felony, larceny, or assault; and (3) the defendant is armed with a dangerous weapon *or* another person is lawfully present in the dwelling. *People v Wilder*, 485 Mich 35, 43; 780 NW2d 265 (2010). Miner was lawfully present in her home the first and second time that Fischer entered her home. Thus, only the first and second elements are pertinent to our evaluation of whether Fischer's substantial rights were affected by the failure to give a specific unanimity instruction.

With regard to the first entry, through cross examination, the defense established that Miner and Fischer had engaged in a sexual relationship and that, in the past, Fischer had been permitted entry into Miner's home. On some of those occasions, he would enter her home by using the garage codes. However, Miner testified that she had previously asked Fischer to leave when he entered her home without her express consent. There is no record evidence refuting Miner's testimony. Therefore, the evidence shows that notwithstanding their relationship, Fischer did not have unrestricted access to Miner's home. Moreover, Miner testified that on the night in question, she did not give him permission to enter her home through the garage. There was also substantial evidence that after the first entry, Fischer physically assaulted Miner. That evidence included Miner's testimony and photographs of the injuries that she sustained in the assault. Further, the jury unanimously convicted Fischer of aggravated assault based on his conduct.

With regard to the second entry, it is undisputed that both Fischer and Miner left the home after the first assault. Miner then snatched her cellular phone from Fischer and reentered her home. She said she locked the door connecting her garage and her home and that her front door was also locked. Notwithstanding that she had locked Fischer out of her home, she testified that he regained entry. Miner believed that he had done so by breaking through the locked front door. At trial, Fischer disputed that he had done so. However, regardless of whether the jury did or did not believe that Fischer broke down the front door, there is no dispute that he reentered the house after (1) Miner screamed at him to leave her home, (2) the two engaged in a violent struggle in the home that caused Miner to flee the home and Fischer to follow her out, and (3) after Miner fled back into the home. Based on that evidence, it is plain that Fischer did not have permission—implied or otherwise—to re-enter her house that night. It is also plain—based on Miner's testimony and the recording of the 911 call—that Fischer did, in fact, reenter the house after any permission he might have had to be there had undeniably been revoked. Thus, regardless of how he regained entry, it is inconceivable that anyone would conclude that the entry was "with permission."

On appeal, Fischer suggests that the evidence of an assault after the second entry was "weaker," given that any assault would have been audible on the 9-1-1 call. However, the second element of first-degree home invasion does not require that the defendant actually assault a person

lawfully in the home. Rather, the second element can be satisfied by evidence "that defendant either *intended when entering to commit a felony, larceny, or assault in the dwelling . . .*" *Wilder*, 485 Mich at 43. Here, given the unrebutted evidence of a very recent prior assault, including photographic evidence showing that Miner was physically injured during the earlier altercation, and given Miner's testimony that when Fischer chased her inside after the initial assault, there was overwhelming evidence that when he entered the second time, he intended to commit an assault in the dwelling. Moreover, as noted above, the jury unanimously believed Miner's testimony that she was assaulted by Fischer. The fact that no assault was audible on the 9-1-1 record is, therefore, not dispositive because the second element could be proven by alternative proofs and, given the jury verdict on the aggravated assault charge, it is clear that they unanimously found an assault occurred.

In sum, based on the overall strength of the evidence supporting a conviction of first-degree home invasion for either the first entry or the second entry, Fischer has failed to show that the trial court's error in failing to provide a specific unanimity instruction affected his substantial rights. Nor can he show that it resulted in the conviction of an actually innocent defendant or that it seriously affected the fairness and integrity of the trial. See *Carines*, 460 Mich at 763.

Additionally, Fischer cannot show that his trial lawyer provided ineffective assistance by failing to request a specific unanimity instruction. In order to demonstrate that his or her lawyer was ineffective, a defendant must show both that his lawyer's performance was deficient and that the deficient performance prejudiced the defense. *People v Taylor*, 275 Mich App 177, 186; 737 NW2d 790 (2007). Here, although Fischer can show that his lawyer's performance fell below an objective standard of reasonableness when he failed to request a specific unanimity instruction, the error did not prejudice the defense. An error prejudices the defense if it is reasonably probable that, but for a lawyer's error, "the result of the proceedings would have been different." *People v Jordan*, 275 Mich App 659, 667; 739 NW2d 706 (2007). In this case, there is overwhelming evidence that the second entry was without permission. Again, the entry was preceded by Miner telling Fischer to leave—thereby revoking any implied permission he had to be in her home—and by Fischer physically assaulting Miner. The evidence that an assault occurred was established by Miner's testimony and photographic evidence of her injuries. And, the jury's unanimous decision to convict Fischer of aggravated assault shows that they credited her testimony as to what happened after she woke with Fischer trying to enter her bed. Given that evidence, no reasonable jury would conclude that the second entry was with permission. Further, considering that the jury unanimously determined that the first entry had resulted in Fischer committing an aggravated assault, there is no basis to conclude that the second entry was for a benign purpose. As a result, even if a specific unanimity instruction had been given, there is no reasonably probability that the result of the proceedings would have been different.

III. JURY'S TRANSCRIPT REQUEST

Fischer next argues that the trial court erred by denying the jury's request to review Miner's testimony without advising of the possibility of reviewing it after further deliberations. A trial court's decision to provide testimony or evidence to a deliberating jury is addressed by MCR 2.513(P), which provides:

If, after beginning deliberation, the jury requests a review of certain testimony or evidence that has not been allowed into the jury room under subrule (O), the court must exercise its discretion to ensure fairness and to refuse unreasonable requests, but it may not refuse a reasonable request. The court may make a video or audio recording of witness testimony, or prepare an immediate transcript of such testimony, and such tape or transcript, or other testimony or evidence, may be made available to the jury for its consideration. *The court may order the jury to deliberate further without the requested review, as long as the possibility of having the testimony or evidence reviewed at a later time is not foreclosed.* [Emphasis added.]

In this case, after approximately an hour of deliberation, the jury requested the transcript of Miner's testimony. In response, the trial court provided the following supplemental instruction

Okay. Uh, jury, we received a note that says can we get the transcript of Heather Miner. Unfortunately, we do not have transcripts prepared. That's something that these are sent out to a private company and they, um, do the transcripts. Um, so we don't have transcripts. I'd ask you to rely on your collective memories of, um, what Heather Miner said.

The court also instructed the jury that if it had "more problems" or needed "anything else," it should let the court know. Before giving the instruction, the trial court addressed the jury's request with the prosecutor and the defense lawyer, stating that it intended to tell the jury that the transcripts were unavailable and that they would have to rely on their collective memories of Miner's testimony. The court's proposed instructions—like its final supplemental instruction—did not include any reference to the jury being able to renew its request to review the testimony at a later time. Fischer's lawyer expressly stated that he had no objection to the trial court's proposed instruction, and after the court provided the supplemental instruction, he did not raise any objection to it. As a result, any challenge to the instruction has been waived. See *People v Carter*, 462 Mich 206, 219-220; 612 NW2d 144 (2000) ("We conclude that, although the trial court violated the court rule by foreclosing to the jury the possibility of later reviewing the requested testimony, this error does not warrant reversal of defendant's convictions because defense counsel specifically approved the trial court's refusal of the request and its subsequent instruction to the jury."). Because the waiver extinguished any error, there is nothing for this Court to review. See *id*. at 216.

IV. SENTENCING

Finally, Fischer argues that the trial court erred by sentencing him as a fourth habitual offender because the prosecutor did not provide timely notice of the sentence enhancement. The prosecution concedes that it failed to provide timely notice of its intent to enhance Fischer's sentence under MCL 769.12 (fourth-offense habitual offender). Instead, it only provided timely notice of its intent to enhance Fischer's sentence under MCL 769.10 (second-offense habitual offender). Having reviewed the record, we agree that the prosecutor failed to provide timely notice of its intent to enhance Fischer's sentence under MCL 769.12. Therefore, the trial court erred by sentencing him as a fourth-offense habitual offender. Because correction of the error will lead to

a different recommended minimum sentence ranger, we vacate Fischer's sentence and remand for resentencing. See *People v Franciso*, 474 Mich 82, 91; 711 NW2d 44 (2006).[1]

We affirm Fisher's convictions, but vacate his sentence and remand for resentencing. We do not retain jurisdiction.

/s/ Colleen A. O'Brien
/s/ Michael J. Kelly
/s/ James Robert Redford

---

[1] Because resentencing is required, we decline to consider Fischer's challenges to the scoring of the prior record variables and the offense variables and his argument that his trial lawyer provided ineffective assistance by failing to object to the challenged sentencing variables. Such challenges are best resolved by the trial court, which must rescore the sentencing guidelines before imposing a new sentence.